UNITED STATES  DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

IN RE: MARSHALL ELLZEY, JR.                CIVIL ACTION

                                           NO. 09-5447

                                           SECTION: "B"(5)


## OPINION

Appellant Colonial Mortgage and Loan Corporation ("Colonial"), a secured creditor, essentially asserts that the Bankruptcy Judge erred in finding that:

1. Colonial's Proof of Claim is *res judicata* as to the amount of the claim and by disallowing Colonial to reform Colonial's Proof of Claim due to Colonial's failure to provide an accurate Proof of Claim;

2. The Automatic Stay extended past the discharge of the Debtor, Appellee Marshall Ellzey, Jr. ("Ellzey") by failing to find an *in rem* action against the debtor's secured property remains intact;

3. Colonial's counsel received (electronic) notice of Ellzey's change of address to LeBoeuf Street and Colonial's motion to appoint a curator in its state court foreclosure action filed 7 days after Ellzey filed in the related bankruptcy action a second notice of address change to Lesseps Street was a reprehensible violation of

-1-

        Ellzey's due process rights; and

4.    Colonial willfully violated the Automatic Stay and/or Discharge Order and imposed sanctions for the violation.

For the following reasons, the instant appeal is dismissed and the Bankruptcy Court's decision is **AFFIRMED**.

On April 11, 2005 Debtor Ellzey filed a Chapter 13 Plan wherein he proposed to pay Colonial $15,000 through monthly payments of $333.00 each through the Chapter 13 trustee. In response on May 17, 2005 Colonial, as a secured creditor, filed a Proof of Claim for the sum of $9,634.02, indicating that sum as the "amount of arrearage and other charges at the time case filed in secured claim." Claim No. 4, Box 5 of Bankruptcy Court Record. Between May 2005 thru June 2006 when the Bankruptcy Court confirmed the plan, and up until August 28, 2008 when Colonial filed a motion for relief from automatic stay, later withdrawn by Colonial for unspecified reasons on September 18, 2008, Colonial never objected to the plan, never sought to amend its own Proof of Claim, and never sought relief requiring Ellzey to make payments outside the plan payments to the Chapter 13 trustee. On September 8, 2008 the Trustee certified without objection that Ellzey had completed final payments under the plan and that final disbursements were made by the trustee. Bankruptcy Court Record Document Number 69. On September 9, 2008 an order was entered discharging Ellzey pursuant to the trustee's statement of completion of the plan. On January

13, 2009 and again without prior objection, an order was entered approving the Chapter 13 trustee's final report and accounting. Bankruptcy Court Record Document 78.

Unbeknownst to Ellzey, his counsel, the trustee and the Bankruptcy Court, Colonial re-instituted on September 16, 2008 a pending foreclosure action in state court against Ellzey's property, the same property which secured the mortgage payments at issue in the Chapter 13 Plan and Colonial's Proof of Claim. The property was adjudicated to Colonial at sheriff's sale on December 18, 2008. On January 23, 2009 Ellzey filed in the Bankruptcy record motions for contempt, sanctions, damages for creditor misconduct, authority to deem mortgage paid in full and for attorney fees. Bankruptcy Court Record Document Number 80. The instant appeal arises from the Bankruptcy Judge's order and reasons for granting the latter motions. Bankruptcy Court Record Document Numbers 95 and 96.

In rendering her decision, the Bankruptcy Judge wrote:

> On May 17, 2005, Colonial filed a proof of claim for the secured amount of $9,634.02.[1]
>
> The home subject to Colonial's mortgage was damaged by Hurricane Katrina in August 2005, and was demolished by the City of New Orleans.

---

[1] Claim No. 4.

Colonial received $5,972.92 in insurance proceeds for Spain Street from Safeco Insurance.[2]

On December 30, 2005, Debtor filed a Notice of Change of Address updating his mailing address to 133 Labouef Street, New Orleans, Louisiana ("Labouef Street").[3]

Colonial alleges that it is still owed $3,659.41 in pre-petition debt and $6,198.58 in post petition expenses.[4] It admits that its proof of claim was for $9,634.02 but avers that this represents only the arrearage due as of the Petition Date and that additional amounts were owed but not included in its proof of claim.

The Bankruptcy Judge properly stated that:

Proofs of claim are sworn statements under penalty of perjury,[5] filed by claimants setting forth all amounts owed by a debtor to the claimant. The proof of claim reflects all debt, whether due or not yet matured, as of the petition date. The purpose of a proof of claim is to provide a statement of the amounts due so that a debtor can formulate a plan for repayment and receive, on completion, a discharge and fresh start.[6]

---

[2] Exhibit Debtor 1.

[3] Pleading 34.

[4] These expenses are primarily associated with Colonial's post-discharge collection efforts.

[5] *In re Cunningham*, 2008 WL 1696756, *15(Bankr.N.D.Tex 2008).

[6] *Id.; In re Bargdill*, 238 B.R. 711, 717 (Bankr.N.D.Ohio 1999).

>A proof of claim is "prima facie evidence of the validity and amount of the claim" and is "deemed allowed" unless an Objection is filed.[7] The Fifth Circuit, in *Sun Finance Company, Inc. V. Howard*,[8] held that the amount of the secured creditor's proof of claim controls the amount due unless an Objection is sustained. Chapter 13 plans do not control the amounts due a secured creditor, but their proofs of claim do.
>
>Trustee routinely objects to the confirmation of plans that fail to provide for payment to a secured home mortgage lender in an amount equivalent to its proof of claim. Conversely, when a proof of claim is filed for a lesser amount than is provided by a plan, Trustee will adjust the amount to be paid to the creditor to match the proof of claim. Because a proof of claim is a sworn statement by the creditor of the total obligations owed, the claimant may not receive more than full payment for the debt reflected on the proof of claim. Any amounts collected over and above that sum are then paid to unsecured claimants, increasing their distributions.
>
>Even Colonial's explanation as to why it omitted some of its debt from its proof of claim does not match the facts of this case. Since Colonial had already accelerated the entire debt and instituted the Foreclosure Suit, the entire debt was actually past due. Taking Colonial at its word that only accrued debt should be included would still require it to list all amounts upon which is sued. Putting aside the fact that Colonial had accelerated its debt, it still failed to include in its proof of claim costs associated with collection of the past due balance incurred and due on the Petition date. Colonial's failure to itemize the calculation

---

[7] 11 U.S.C. § 502(a) and FRBP 3001(f) (emphasis added).

[8] *Sun Finance Company, Inc. V. Howard*, 972 F. 2d 639 (5th Cir. 1992).

of the debt owed in its proof of claim made discovery of this error impossible for Debtor or Trustee.

Debtor borrowed $12,647.22 from Colonial in 1999.[9] After making payments for five years, Debtor began asking Colonial for a payoff balance which was not provided. When Debtor complained of Colonial's lack of attention to his granddaughter-in-law, Darlene Shepard, she attempted to assist him. She too made several requests for a payoff to no avail. Frustrated by this lack of cooperation, Debtor stopped paying Colonial which caused a default.

When Ms. Shepard learned that Debtor had unilaterally stopped paying on the Colonial loan, she referred Debtor to legal counsel who filed this bankruptcy.

Debtor is elderly but in control of his faculties. The Court was impressed with his attention to detail and his consistent and timely payments to Trustee postpetition. Debtor's testimony regarding unanswered requests for a payoff from Colonial was highly credible.

Ms. Shepard was also highly credible. At the time she was assisting Debtor with his problems, she was a law student.[10] The Court found her to be articulate, knowledgeable, and thorough. Ms. Shepard testified that as a result of Hurricane Katrina, she knew Colonial had received some amount in insurance proceeds for damage to Debtor's home. However, neither she nor Debtor knew the amount received nor did they know the balance of the loan because attempts to get a payoff had been unsuccessful. Both Debtor and Shepard explained that the estimate of $15,000.00 contained in the Plan was a guess as to the maximum amount owed.

---

[9] Exhibit Debtor 2.

[10] She has since graduated.

> Since Colonial had failed to send Debtor a requested payoff and the costs and fees associated with the Foreclosure Suit were not disclosed to Debtor, it was not unreasonable for Debtor to assume that Colonial's proof of claim was correct. Based on the testimony of the witnesses, the Court concludes that Debtor had no reason to question the amount provided by Colonial in its proof of claim.
>
> This case was under the Court's supervision for over three years. During that time, Debtor made regular monthly payments to Trustee as required by the confirmed plan [and with Colonial's knowledge, acquiescence and participation].[added].
>
> Colonial is a sophisticated party and was represented by counsel throughout these proceedings. Both Colonial and its counsel received notice of all pleadings, hearings, and orders entered in this case. They received copies of the Plan, the Confirmation Order, Trustee's Final Report and Account, and the Order of Discharge.
>
> Colonial contends that its proof of claim reflect only the past due amounts owed and that it mistakenly omitted the remaining unmatured balance. Colonial assumed Debtor was in a regular pay plan and would continue to make payments equal to the note's monthly installments of $228.48 in addition to his payments on the Plan. As a result, Colonial mistakenly failed to include the remaining balance in its proof of claim.

Interestingly, Colonial acknowledges that it chose to participate in, not ignore, the bankruptcy action by filing a proof of claim and is bound by the Chapter 13 Plan. Record Document Number 6, page 2. The record clearly shows Colonial's participation in the Chapter 13 proceedings for over three years. During that time, including the period of re-initiating foreclosure

proceedings, Colonial, as active party in the bankruptcy case would have received electronic notice of pleadings and orders.  Colonial knew at all pertinent times who represented Ellzey and knew that timely review of the court record would show address changes filed by any party.

The creditability findings by the Bankruptcy Judge should not be reversed because they are supported by the record.  Colonial never contested lack of electronic notice of any filing until now.  It claims there is no evidence of electronic notice of Ellzey's filing of address changes in December 2005 (Bankruptcy Court Record Document Number 34) and again in October 2008 (Bankruptcy Court Record Document Number 74).  It is incredible that Colonial neither checked the bankruptcy record nor asked Ellzey's counsel for Ellzey's address afer it claimed an inability in the foreclosure action to serve Ellzey at an address that Colonial previously knew was incorrect.  Equally incredible is Colonial's use of incorrect due amounts in the re-instituted foreclosure action.  Colonial failed to provide Ellzey with payoff figures, failed to provide accurate sums in the proof of claim, failed to timely correct that admitted failure, failed to credit in the re-instituted foreclosure action sums it received from the Chapter 13 trustee and sums it received from insurance proceeds for damage caused by Hurricane Katrina to Ellzey's destroyed home - the same property that Colonial knew was either uninhabitable or demolished.  Again, the

credibility findings by the Bankruptcy Judge will not be disturbed in view of the record evidence.  Colonial's admitted attempt to collect on miscalculated sums and the intentional use of an address that it knew was not Ellzey's correct address after Hurricane Katrina to perfect service of process are shocking, reprehensible and inexcusable violations of clear orders from the bankruptcy court.  The Bankruptcy Judge showed considerable restraint and leniency by imposing modest financial sanctions and other sanctions for clearly contemptuous conduct.  Equally appalling is Colonial's untimely request for equitable relief from its own admitted errors and inexcusable laxity that ultimately caused inequitable, illegal and avoidable suffering upon Ellzey and needless waste of judicial resources to address Colonial's misdeeds.  The record supports the Bankruptcy Judge's findings that "Colonial's actions with regard to collection on the omitted balance cannot be characterized as accidental"...but, in fact, "were egregious...and intentional." Facts, law and equity favor Ellzey, not Colonial.

Accordingly, the instant appeal is **DISMISSED**, with all cost incurred by Appellee Marshall Ellzey, Jr. assessed against the Appellant, Colonial Mortgage and Loan Corporation.  The judgment of the Bankruptcy Court is **AFFIRMED**.

New Orleans, Louisiana, this 29th day of September, 2010.

UNITED STATES DISTRICT JUDGE